IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA,

vs.                                Case Nos.:        4:14cr58/MW/CAS
                                                    4:18cv55/MW/CAS

ORMAN CURTIS WEATHERSPOON,
      Reg. No. 61313-018,
      Defendant.

_____

## <u>REPORT AND RECOMMENDATION</u>

This matter is before the court upon Defendant's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 and supporting memorandum of law (ECF No. 362) and the Government's response in opposition thereto (ECF No. 366).   The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.   *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).   After review of the parties' arguments and the record, the court recommends that the § 2255 motion be denied without an evidentiary hearing.   *See* Rules Governing Section 2255 Cases 8(a) and (b).

## I.    BACKGROUND

In September of 2014 a grand jury charged Defendant Orman Curtis Witherspoon ("Witherspoon") with conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 1343 and 1349 ("Count One") and theft of government funds and aiding and abetting in violation of 18 U.S.C. § 641 ("Count Five").   ECF No. 1.   The charges stemmed from Witherspoon's involvement in a conspiracy led by his wife, Perrissa Dixon ("Dixon") to file fraudulent tax returns using the personal identifying information ("PII") of individuals both alive and deceased.   ECF No. 111.   Dixon, Katrina Pratt, Stefondra Laneale Monroe, and Titus Lee Tixon were charged as co-defendants.   Witherspoon was represented at all pertinent points in the proceedings by Charles A. McMurry, Esq.

Witherspoon entered a plea of guilty on March 18, 2015, pursuant to a written plea agreement and statement of facts after a thorough plea colloquy.   ECF No. 111-113; ECF No. 269.   The lengthy statement of facts set forth details of the conspiracy.   Many individuals whose identities had been stolen had applied to work as "work study" students at Florida Agricultural and Mechanical University ("FAMU"), where co-defendant Pratt was employed.   Other stolen PII was provided by a "network of

accomplices" who received money from Dixon for each name they

provided.   Unauthorized tax returns were filed using this stolen PII from an

IP address where Witherspoon, Dixon and Dixon's sister and co-defendant

Monroe were living.   Refunds were deposited into a bank account in

Defendant Witherspoon's name or the name of other co-defendants, or

some refunds were issued as debit cards.   A search warrant executed at

the residence located incriminating evidence.

The final Presentence Investigation Report ("PSR") noted that

Witherspoon lived in the residence where most of the returns were filed and

where fraudulently obtained funds were used to pay bills.   ECF No. 147,

PSR ¶ 45.   Witherspoon had a bank account that was used for the deposit

of tax refunds and treasury checks, following which funds were transferred

to an account in Dixon's name.   *Id.*   Approximately 180 individuals had

their identity stolen as a result of the offense, although the IRS had mailing

information for only 95 victims.   *Id.,* PSR ¶ 49.   The report also reflects

that Witherspoon admitted "some involvement" in the case.   *Id.*, PSR ¶ 56.

He admitted that taxes were filed from his residence, but said that up to 13

people shared the residence and used the common computer, so it is

difficult to know who filed what taxes.   Witherspoon acknowledged that

Dixon used his student account to deposit funds and that he "filed a few tax returns on his own, including some using the [stolen] identities provided by co-defendant Pratt." *Id.*

Witherspoon's Total Offense Level of 24 included a base offense level of 7, a 14-level adjustment due to the amount of loss, a four-level adjustment due to the number of victims, a two-level adjustment for unauthorized access devices, and a three-level downward adjustment for acceptance of responsibility. ECF No. 147, PSR ¶¶ 59-70. He had a criminal history category of VII, and an applicable advisory guidelines range of 77 to 96 months of imprisonment. McMurry made four objections to the PSR. He argued that Witherspoon (1) should receive a minimal or minor role reduction; (2) should not be held accountable for the entire loss of the conspiracy; (3) should not receive a two-level increase for the production of unauthorized access devices; and (4) should not receive a four-level increase for the number of victims. The court overruled each of the defense objections. ECF No. 305 at 122-126. The Court sentenced Witherspoon slightly below the calculated advisory guidelines range to a term of 72 months' of imprisonment. The basis for the departure was to avoid unwarranted sentencing disparities among defendants, and to take

into account Witherspoon's overall role as compared to other conspirators. ECF No. 305 at 140-141; ECF No. 226.   The court specifically noted that "any sentence—one day—less than six years would not be adequate in this case, irrespective of any ruling on any objection."   ECF No. 305 at 141.

Witherspoon appealed, raising three allegations of error.   He contended that the district court erred in failing to reduce his offense level for being a minimal or minor participant, in holding him responsible for the entire amount of loss, and in increasing his offense level due to the production of fraudulent debit cards, when he personally did not do this. ECF No. 355 at 3.   The appellate court rejected his arguments in turn.   It found Witherspoon had not established that he was situated differently than any of the co-conspirators other than his wife.   It found the loss amount to be appropriate given a defendant's responsibility for the reasonably forseeable acts of his coconspirators, and Witherspoon's physical presence when the conspiracy was discussed.   Similarly, his accountability for the fraudulent debit cards was appropriate as not only was it reasonably foreseeable, but such cards were found in Witherspoon's home, bedroom and wallet.

Case Nos.: 4:14cr58/MW/CAS; 4:18cv55/MW/CAS

Witherspoon timely filed the instant § 2255 motion, claiming counsel's representation of him was constitutionally deficient.   The Government argues that his allegations are conclusory, inconsistent, and directly refuted by the record.   Witherspoon did not file a reply.

## II.    ANALYSIS

A. <u>General Standard of Review</u>

"Section 2255 does not provide a remedy for every alleged error in conviction and sentencing."   *Spencer v. United States*, 773 F. 3d 1132, 1138 (11th Cir. 2014).   Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to section 2255 are extremely limited.   A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.   See 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).   "Relief under 28 U.S.C. ' 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"   *Lynn*

Case Nos.: 4:14cr58/MW/CAS; 4:18cv55/MW/CAS

*v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

A district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal. *Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014); *Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000). Similarly, issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred. *Lynn*, 365 F.3d at 1234–35.

Ineffective assistance of counsel claims generally are not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States*, 538 U.S. 500, 503 (2003). To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy.

*Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Williams v. Taylor*, 529 U.S. 362, 390 (2000); *Darden v. United States*, 708 F.3d 1225, 1228 (11th Cir. 2013). *Strickland*'s two-part test also applies to guilty pleas. *Lafler v. Cooper*, 566 U.S. 156, 162-63 (2012) (citing *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)). A defendant will be required to show that but for counsel's errors, he would not have pleaded guilty and would have instead insisted on proceeding to trial. *Id.* at 163 (quoting *Hill*, 474 U.S. at 59). A defendant's "after the fact testimony concerning his desire to plead, without more, is insufficient to establish" prejudice. *Pericles v. United States*, 567 F. App'x 776, 782 (11th Cir. 2014) (quoting *Diaz v. United States*, 930 F.2d 832, 835 (11th Cir. 1991)); *Rosin v. United States*, 786 F.3d 873 (11th Cir. 2015). In applying *Strickland*, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs. *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013); *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was

reasonable considering all the circumstances." *Strickland*, 466 U.S. at

688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th

Cir. 2007).   Reviewing courts "must indulge a strong presumption that

counsel's conduct fell within the wide range of reasonable professional

assistance." *Strickland*, 466 U.S. at 689; *see also Chandler v. United

States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption

of reasonableness of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d

362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to

error-free representation").   Counsel's performance must be evaluated

with a high degree of deference and without the distorting effects of

hindsight.   *Strickland*, 466 U.S. at 689.   To show counsel's performance

was unreasonable, a defendant must establish that "no competent counsel

would have taken the action that his counsel did take."   *Gordon v. United

States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler*,

218 F.3d at 1315.   "[T]he fact that a particular defense ultimately proved to

be unsuccessful [does not] demonstrate ineffectiveness."   *Chandler*, 218

F.3d at 1314.   When reviewing the performance of an experienced trial

counsel, the presumption that counsel's conduct was reasonable is even

stronger, because "[e]xperience is due some respect."    *Chandler*, 218 F.3d at 1316 n.18.

To establish prejudice, a defendant must show that, but for counsel's deficient performance, the outcome of the proceeding would have been different.    *Strickland*, 466 U.S. at 694.    "The likelihood of a different result must be substantial, not just conceivable."    *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (quoting *Strickland*).    For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him."    *Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010).    A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."    *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687).    Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level.    *Glover v. United States*, 531 U.S. 198,

203–04 (2001).   A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance."   *Id.* at 203.

To establish ineffective assistance, a defendant must provide factual support for his contentions regarding counsel's performance.   *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987).   Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test.   *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012).

Furthermore, counsel is not constitutionally deficient for failing to preserve or argue a meritless claim.   *Denson v. United States*, 804 F.3d 1339, 1342 (11th Cir. 2015) (citing *Freeman v. Attorney General, Florida*, 536 F.3d 1225, 1233 (11th Cir. 2008)).   This is true regardless of whether the issue is a trial or sentencing issue.   *See, e.g.*, *Sneed v. Florida Dep't of Corrections*, 496 F. App'x 20, 27 (11th Cir. 2012) (failure to preserve meritless *Batson* claim not ineffective assistance of counsel); *Lattimore v. United States*, 345 F. App'x 506, 508 (11th Cir. 2009) (counsel not ineffective for failing to make a meritless objection to an obstruction enhancement); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir.

1992) (no ineffective assistance of counsel for failing to preserve or argue meritless issue).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Chandler*, 218 F.3d at 1313. This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Dingle*, 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" *Dingle*, 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)). A defendant's belief that a certain course of action that counsel failed to take might have helped his case does not direct a finding that counsel was *constitutionally ineffective* under the standards set forth above.

An evidentiary hearing is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief." *See* 28

Case Nos.: 4:14cr58/MW/CAS; 4:18cv55/MW/CAS

U.S.C. § 2255(b); *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir.

2015); *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008).

Not every claim of ineffective assistance of counsel warrants an evidentiary

hearing.   *Gordon*, 518 F.3d at 1301 (citing *Vick v. United States*, 730 F.2d

707, 708 (11th Cir. 1984)).   To be entitled to a hearing, a defendant must

allege facts that, if true, would prove he is entitled to relief.   *See*

*Hernandez v. United States*, 778 F.3d 1230, 1234 (11th Cir. 2015).   A

hearing is not required on frivolous claims, conclusory allegations

unsupported by specifics, or contentions that are wholly unsupported by the

record.   *See Winthrop–Redin v. United States*, 767 F.3d 1210, 1216 (11th

Cir. 2014) (explaining that "a district court need not hold a hearing if the

allegations [in a § 2255 motion] are . . . based upon unsupported

generalizations") (internal quotation marks omitted); *Peoples v. Campbell*,

377 F.3d 1208, 1237 (11th Cir. 2004).   Even affidavits that amount to

nothing more than conclusory allegations do not warrant a hearing.   *Lynn*,

365 F.3d at 1239.   Finally, disputes involving purely legal issues can be

resolved by the court without a hearing.

   B. Witherspoon's Ineffective assistance of counsel claims

Witherspoon's single ineffective assistance of counsel claim contains several separate allegations.   Although the allegations include significant overlap, the court has separated them for ease of review.

1.  Minimal Role

Witherspoon first claims that counsel was constitutionally ineffective because he did not demonstrate to the court Witherspoon's minimal involvement in the conspiracy, which resulted in a "substantially greater sentence."   ECF No. 362 at 4.   In support of this allegation, Witherspoon has attached an affidavit to his motion in which he purports to set forth his limited involvement in the conspiracy.   *Id.* at 14-20.

The defendant has the burden of establishing his role in the offense by a preponderance of the evidence.   *United States v. Bernal-Benitez*, 594 F.3d 1303, 1320 (11th Cir. 2010) (citing *United States v. Rodriguez De Varon*, 175 F.3d 930, 937 (11th Cir. 1999)).   The district court must assess all of the facts probative of the defendant's role in his or her relevant conduct in evaluating the defendant's role in the offense.   *United States v. Boyd,* 291 F.3d 1274, 1277 (11th Cir. 2002) (quoting *Rodriguez De Varon*, 175 F.3d at 943).   It is entirely possible for conspiracies to exist in which there are no minimal or minor participants or for which the least culpable

participants, for whatever reason, were not indicted.    *Rodriguez de Varon*, 175 F.3d at 944.   In any event, the fact that a particular defendant may be least culpable among those who are actually named as defendants does not conclusively establish that he performed a minor role in the conspiracy. *United States v. Zaccardi*, 924 F.2d 201, 203 (11th Cir. 1991); *United States v. Cacho*, 951 F.2d 308 (11th Cir. 1992); *United States v. Hernandez*, 522 F. App'x 542, 544 (11th Cir. 2013).

As noted above, McMurry challenged the lack of minimal role adjustment as well as the amount of loss attributed to his client.   ECF No. 305 at 107-114.   The court not only ruled against the minimal role adjustment but also found a minor role adjustment would not be appropriate.   The record reflected that Witherspoon's wife, with whom he had a very close relationship, was the leader of the tax scheme.   The IRS recovered stolen PII and many fraudulent returns were filed from Witherspoon's and Dixon's residence.   Proceeds from the conspiracy were used to pay bills at the home and Witherspoon had unauthorized debit cards in his bedroom and wallet.   He received PII from co-conspirator Pratt on one occasion, and he opened a bank account which was used to receive and transfer fraudulent proceeds.

Case Nos.: 4:14cr58/MW/CAS; 4:18cv55/MW/CAS

Based on this evidence, the court concluded that Witherspoon played

neither a minimal nor a minor role in the conspiracy.    Counsel cannot be

faulted for not achieving a different outcome in light of the evidence and

controlling law.    Furthermore, the district court specifically stated at

sentencing that "any sentence—one day—less than six years would not be

adequate in this case, irrespective of any ruling on any objection."    ECF

No. 305 at 141.    Therefore, Williams cannot show prejudice, because any

additional arguments would not have changed his sentence.    *Glover*, 531

U.S. at 203-04.

  2.  Failure to investigate

  In the memorandum accompanying his § 2255 motion, Witherspoon

identifies several separate claims of ineffective assistance of counsel,

including counsel's alleged "failure to investigate."    Witherspoon complains

that had counsel investigated his "actual participation" in the conspiracy,

counsel would have understood that he should have been held accountable

for only the $18,000 in fraudulent proceeds that passed through his bank

account.    ECF No. 362 at 25.    This argument misapprehends the law

governing conspiracy.

As noted by the Eleventh Circuit in its opinion affirming Witherspoon's sentence, a defendant is held responsible not only for the acts in which he personally participated, but for the loss that he knew or "under the circumstances reasonably should have known was a potential result of the offense," and for the reasonably foreseeable acts of his co-conspirators in furtherance of the conspiracy.   ECF No. 355 at 6 (citing U.S.S.G. § 2B1.1 cmt. n.3(A)(iii), *United States v. Baldwin*, 774 F. 3d 711, 727 (11th Cir. 2014)).   Counsel nonetheless objected, albeit unsuccessfully, to the amount of loss attributed to Witherspoon, and he was not constitutionally ineffective.

Furthermore, no absolute duty exists to investigate particular facts or a certain line of defense.   *Chandler*, 218 F. 3d at 1317-18; *Strickland*, 104 S. Ct. at 2066 ("strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation").   In this case, there was sufficient evidence to support both a guilty plea and counsel's advice that accepting responsibility and entering a guilty plea was in Witherspoon's best interest.   Witherspoon has not shown that McMurry's performance was constitutionally deficient.

3. Voluntariness of Guilty Plea

Although not identified as a separate claim, Witherspoon asserts that counsel never discussed the merits of his case with him, instead instructing him from the very first meeting to plead guilty.   ECF No. 362 at 26.   This advice, Witherspoon states, was based not on any investigation, but on counsel's chauvinistic assumption that, as the spouse of the lead conspirator, he had to have been guilty.   *Id.*   Witherspoon also claims he was "subjugated to counsel's demand that he parrot the responses required" at the plea proceeding.   ECF No. 362 at 27.

To the extent this claim can be construed as a challenge to the voluntary, intelligent and knowing nature of his guilty plea, Witherspoon's position is refuted by the record, and particularly his sworn statements at the plea colloquy.   ECF No. 269.   At his rearraignment, Witherspoon assured the court that no one had coerced, pressured or threatened him to enter a plea, and he understood that he was waiving any possible defenses to the charges.   He also stated he had sufficient time to discuss both the plea documents and his decision to enter a plea with counsel, and he was pleased with counsel's representation of him.   After the court explained the charges to him, Witherspoon took the opportunity to confer with counsel.

McMurry then explained to the court that Witherspoon could not say under oath that all of the information in the statement of facts as it related to other people was correct because he did not have personal knowledge of it. However, Witherspoon admitted that he knew fraudulent tax returns were being filed, that some of the money was deposited into his bank account, and that he had been willfully involved in the conspiracy. Before concluding the hearing, the court again verified that Witherspoon had had adequate time to discuss his case with his attorney and that he was satisfied with counsel's representation. Witherspoon also declined the opportunity to change any of the answers he had given under oath.

An allegation of a coerced plea, supported by a factual allegation, can support a § 2255 motion. *See Fontaine v. United States*, 411 U.S. 213, 214–15 (1973); *United States v. Lampazianie*, 251 F.3d 519, 524 (5th Cir. 2001). However, a defendant's statements during a Rule 11 colloquy as well as any findings made by the judge accepting the pleas constitute a formidable barrier in any subsequent collateral proceedings. *Blackledge v. Allison,* 431 U.S. 63, 73–74 (1977); *Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (citing *Blackledge*). This is because solemn declarations made under oath in open court carry a strong

presumption of verity.   *Blackledge*, 431 U.S. at 73–74; *Winthrop-Redin,*

767 F. 3d at 1216 (citing *Blackledge*).   They are presumptively trustworthy

and are considered conclusive absent compelling evidence showing

otherwise; the subsequent presentation of conclusory and contradictory

allegations does not suffice.   *Blackledge*, 431 U.S. at 73–74; *Winthrop-

Redin*, 767 F.3d at 1216.   In fact, such allegations are subject to summary

dismissal.   *Winthrop-Redin*, 767 F.3d at 1216 (citing *Blackledge*, 431 U.S.

at 74).   A defendant "bears a heavy burden to show his statements [under

oath] were false."   *Winthrop-Redin,* 767 F.3d at 1217 (quoting *United

States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988)).   "[I]f the Rule 11

plea taking procedure is careful and detailed, the defendant will not later be

heard to contend that he swore falsely."   *United States v. Stitzer*, 785 F.2d

1506, 1514, n.4 (11th Cir. 1986) (quoting *United States v. Barrett*, 514 F.2d

1241, 1243 (5th Cir. 1975)).   The allegations in Witherspoon's § 2255

motion lack the "compelling evidence" required to overcome his sworn

allegations before the district court, and he filed nothing further in support

of his position after the Government's response.

    4.   Failure to Object

Case Nos.: 4:14cr58/MW/CAS; 4:18cv55/MW/CAS

Witherspoon identifies counsel's "failure to object" as a separate ineffective assistance of counsel claim.   He complains that counsel filed the right objections but did nothing to provide factual support for the objections.   ECF No. 362 at 29.

Witherspoon's motion is replete with "factual" allegations that are contradictory or not supported by the record.   For instance, as evidence of his limited involvement in the conspiracy, Witherspoon claims that he and Dixon were in the midst of divorce proceedings.   This was mentioned by neither Witherspoon nor Dixon in their statements to the court at sentencing requesting leniency in each other's behalf.   ECF No. 272 at 195-201.   Rather the focus was on the closeness of their relationship. Witherspoon also contends that he "did not live at the family home" and he did not "participate[] in any aspect of the fraudulent tax scheme" although admitting he was used to "assist in an after-the-fact money laundering scheme."   ECF No. 362 at 26.   Even this admission contradicts the PSR's description of Witherspoon's acceptance of responsibility, specifically his statement that he "filed a few tax returns on his own, including some using the identities provided by co-defendant Pratt."   ECF No. 147, PSR ¶ 56.   The degree of financial benefit Witherspoon obtained

Case Nos.: 4:14cr58/MW/CAS; 4:18cv55/MW/CAS

from the conspiracy, and his limited involvement were apparent from the record.

Although counsel was unsuccessful in convincing the court that Witherspoon was entitled to a reduction as a minor or minimal participant, the court deviated from the applicable guidelines range.   He has not established counsel's handling of the objections at sentencing was constitutionally ineffective.   And, because the district court believed the sentence to be appropriate, he cannot show he was prejudiced by counsel's failure to file different or additional objections.   ECF No. ECF No. 305 at 141.

5.  Constructive denial of counsel

Finally, Witherspoon asserts that he was constructively denied counsel due to myriad actions and omissions, several of which were discussed above.   A constructive denial of counsel occurs when the lawyer has a conflict of interest or has completely abandoned his client.   *See Martel v. Clair*, 132 S. Ct. 1276, 1279 (2012).   "[C]onstructive denial of counsel is "legally presumed to result in prejudice" and thus to constitute a structural error.   *United States v. Arbolaez*, 450 F.3d 1283 at 1294-95 (11th Cir. 2006) (citing Strickland, 466 U.S. at 692; *see also United States v.*

*Cronic*, 466 U.S. 648, 659 & n. 25, 104 S. Ct. 2039, 2047, 80 L.Ed.2d 657

(1984) (structural error exists where counsel is "prevented from assisting

the accused during a critical stage of the proceeding")).   The record

unequivocally establishes that Witherspoon was not abandoned by his

attorney in this case.

Witherspoon claims counsel did not "completely understand"

Witherspoon's involvement in the conspiracy, which does not alone

establish constitutionally ineffective assistance of counsel.   *Chandler;*

*Strickland, supra.*   Nor does the court concur with Witherspoon's

assessment that counsel never put forth argument to contradict or

challenge the Government's case.   As noted above, counsel filed and

strenuously argued multiple objections to the PSR.

Witherspoon claims that McMurry did not subject the prosecution's

case to meaningful adversarial testing and that counsel should have forced

the Government to "show a single act consistent with the conspiracy

charged in Count One."   ECF No. 362 at 30-31.   This assertion is

meritless.   As Witherspoon was instructed at the rearraignment, by

entering a guilty plea he was giving up his right to make the Government

prove its case against him beyond a reasonable doubt.   ECF No. 269 at

11.

Witherspoon also complains that McMurry appeared to "piggy-back"

off counsel for Dixon during the proceedings.   Standing alone, it is not

constitutionally ineffective for the attorney representing a less culpable

defendant to adopt arguments made by co-counsel, particularly given the

close relationship between Witherspoon and Dixon and the overlap of

evidence.   Finally, Witherspoon's recollection of counsel's cross-

examination of witnesses is also flawed.   ECF No. 362 at 22-23.   The

sentencing proceeding took place in several parts, and McMurry

extensively cross-examined key Government witness Jacob Stafford during

the portion of the hearing devoted to Witherspoon, stopping to confer with

his client more than once during the examination.   ECF No. 271 at 45-73.

Witherspoon's claim of constructive denial of counsel does not

warrant relief.

### III.   CONCLUSION

An evidentiary hearing is not necessary to resolve Witherspoon's

claims because "the motion and files and records conclusively show that

the prisoner is entitled to no relief."   *See* 28 U.S.C. § 2255(b); *Rosin*, 786

Case Nos.: 4:14cr58/MW/CAS; 4:18cv55/MW/CAS

F.3d at 877.   For the foregoing reasons, the court finds that Witherspoon

has not shown that any of the claims raised in his motion to vacate, set

aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit.

Therefore, his motion should be denied in its entirety.

## IV.   CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Proceedings

provides that "[t]he district court must issue or deny a certificate of

appealability when it enters a final order adverse to the applicant," and if a

certificate is issued "the court must state the specific issue or issues that

satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   A timely notice of

appeal must still be filed, even if the court issues a certificate of

appealability.   Rule 11(b), § 2255 Rules.

After review of the record, the court finds no substantial showing of

the denial of a constitutional right.   § 2253(c)(2); *Slack v. McDaniel*, 529

U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation

omitted).   Therefore, it is also recommended that the court deny a

certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the

final order, the court may direct the parties to submit arguments on whether

a certificate should issue."   If there is an objection to this recommendation

by either party, that party may bring this argument to the attention of the

district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.      The motion to vacate, set aside, or correct sentence (ECF No.

362) be **DENIED**.

2.      A certificate of appealability be **DENIED**.

At Tallahassee, Florida, this 29th day of January, 2020.


s/ Charles A. Stampelos
**CHARLES A. STAMPELOS
UNITED STATES MAGISTRATE JUDGE**


**<u>NOTICE TO THE PARTIES</u>**

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.   <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>   A copy of objections shall be served upon all other parties.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.